Bob, the case on our call today is agenda number four, number 129784, People of the State of Illinois v. Antoine Joiner. Counsel, are you prepared to proceed? Thank you and good morning, Your Honors. Counsel, may it please the Court, my name is Doug Johnson and I represent the appellant Antoine Joiner, who is currently serving 34 years, pursuant to his murder and attempted murder convictions. Our position here, that's the first issue, is that the post-conviction petition was filed on July 7, 2021. The clerk of Cook County Court entered the case onto the official docket on that date. Thus, the case was docketed on July 7, 2021. So at that point, the judge either had to dismiss the case in 90 days, about on October 6, or advance the case to the second stage. And since that was not done, this case should be remanded. A, because it was docketed and not dismissed in the mandatory 90 days, and secondly, because the petition was not frivolous and patently without merit. Starting with the section of the Post-Conviction Hearing Act, 112-122-1, the plain reading says, the proceeding shall be commenced by filing with the clerk of the court in which the conviction took place a petition, verified by affidavit that was done. There's a little more wording in that it says, the clerk shall docket the petition for consideration by the court. Pursuant to 122-2.1. Nowhere does the wording of the statute talk about payment of the fee. The plain language means once the PCP is filed and served, the clerk is to docket the petition, and that is exactly what happened here. The case law, I believe, supports this also. This court in Brooks, in 2006, held that docketing means more than the act of the court receiving the post-conviction petition. And that was, up to that point, the filing date was often seen as the docketing date. But in Brooks, this court said, well, it means a little more. And what Brooks said is docketing means the cause is entered in the court's official docket for further proceedings. Were further proceedings set here? And they were, I believe... In this case, when the clerk did whatever electronic magic of entering this in, was the case set for further proceedings? I submit that it was. It would be meaningless to put the case onto the official docket and not expect to have further proceedings. So I don't think the case law requires what those proceedings will be. And in Brooks, the same thing happened. Also, we talked about the Begay case in our brief. And that case, when the PCP was delivered, it was not put onto the official record the first time, in December of 2013, I believe. And that is why the court did not hold that the case was docketed at that time. But again, here, there is no dispute. The half sheet in this case is the official record. And on that day, July 7th, we have to consider it docketed. So the case would go forward. The relief could be granted or denied or whatever. And there's no requirement to pay the fee? There is a requirement to pay the fee. And I'll get to the Lenz case on that. But it is not a prerequisite to the docketing, is our position. And no court has ever so held. Counsel, let's get back to Brooks. So in that case, the court found that the petition was docketed on September 20th when the clerk entered the petition into the case file and set it for hearing. What date was it set for hearing in this case? In our case, it was not set for hearing on July 7th. But I don't believe that Brooks, and I think they explicitly stated or are close to it, the wording, of course, that you read is an exact quote. But the setting of the dissent said better than I can in our case. The setting of the hearing, while that indeed happened in Brooks and not here on July 7th, it was not what is required to docket the case. It did happen there. But that saying the entry into the official record and setting, the case was docketed on this date when it was entered into the official record and set for hearing is different than saying the case was docketed on this date because not only was it entered into the official record, but also because it was set for hearing. I submit neither Brooks or Begay requires that the matter be set for hearing to have that date be considered the docket date, although those cases are different from ours in that there was a setting of a hearing date when the case was considered docketed. But neither of those cases... You were the lawyer, right? You were the lawyer? I was. So you filed this and you did not file a fee. I didn't. I didn't. My office filed it. Pardon? My office filed it. Okay. So as you were talking about, it was present. And you never heard about it again. There wasn't any communication that it was motioned off for a date. You were supposed to go to court or anything like that, right? That is correct. So it is different. I was speaking of the Lentz case. It is different than the Lentz case because no letter was sent after the filing date. But if we look at the Lentz case, the docketing date was the date the petition was filed, not the date... The court did not find it was the date that the letter was sent by the clerk. And indeed, in our case, the majority held that the filing date was, in Lentz, was the date the petition was filed. So could it... I mean, the whole purpose of these 90 days is to get the case in front of the judge to make some kind of decision in 90 days, right? Correct. So from anything that you've seen here, could that petition ever be presented to the judge, given the fact that there was no fee paid? Oh, I believe it could. I think in Brooks and Magee, we don't know if there was a fee paid or not. No, I'm saying did it get before a judge. In this case? Yeah. I don't believe it did. Why? Why didn't it get before the judge? I don't know. Because the fee wasn't paid? I don't believe so, because just having experience throughout the counties of the state, oftentimes the petition does not get before the judge, and calls have to be made. And sometimes that goes on and on and on. Where is this petition? Where is it? I can represent it as an officer of the court. It happened out of Maywood, where I could not get a petition heard, and the fee was paid. And I just could not get the judge's attention. And I can also say it happened in a county, in another case just recently, where it didn't get on the judge's call, so he advanced it to the second stage, even though the fee was paid. There's a lot of confusion, I think, in the clerk's office. And I think that gets to the point where we can't place this burden on the clerks or have the clerks so involved in the adjudication of individuals' alleged constitutional violations, because the wording of the rules is very clear. You receive the document, you receive the post-conviction, docket it. And that's what happened here. We can't have the clerks be responsible. Maybe you'll send a letter and request a fee. Maybe you won't. Maybe you won't know that a fee is required when we give you this petition. Maybe you won't do this. We have to take it out of the clerk's hands. And as far as let's... You can take it out of the clerk's hands, but that's your position. Can I ask you a few? Let's assume you agree with me before the court, and yet the court did not act. Let's talk about the merits of your claim. Okay. With regard to the court's finding that it was frivolous and patented without merit? Yes. As we know, although not absurdly low, this is a first-stage dismissal. In this case, the 16th, Antwon Jr. was convicted based not on any forensic evidence, not on any admissions, merely on the testimony of the victims who were in an opposite gang who did not identify the shooter, and there were no other eyewitnesses. They just gave his nickname and said, I've known him for a long time, or I've known him for a minute. And that's what it was. Now, on appeal, the court looked at the biggest factors and said this identification is enough. But I submit to you, even though sufficient, this evidence was not so strong that two witnesses, and I'll just take the ineffective assistance of counsel claim, that two witnesses from two different perspectives could support Mr. Joyner's claim. Let's look at those two witnesses. Marcus Gist says, I was with Antwon at the time, and he states what they did. And I believe he seems credible because he also says we smoked a blunt, something it's probably not hard to believe what these two 16-year-olds were engaging in. But there seems to be no reason why not present that witness. Could it have tipped the scales? Well, if this court doesn't think that would have tipped the scales, what about Darkenia Donner? She is framed as an ineffective assistance of counsel claim. Yes. What do we know about what the attorney knew about Mr. Gist? At the first stage, we pled that the attorney did know about Mr. Gist. It is not in Mr. Gist's affidavit. But the state does not dispute in its brief whether or not the attorney knew about him. I mean, we have to look at the affidavits. We have right now the affidavits, right? Yes. And he does not say he had any contact with the lawyer. He doesn't say anything about what the lawyer knew or what the lawyer didn't know. Don't we have to just keep our framework to be the affidavits that are before the court? Well, then I would go to Darkenia Donner's affidavit because you're exactly, of course, exactly right that Mr. Gist does not reference that. But Darkenia Donner astoundingly. So let's just talk about ineffective assistance. Mr. Gist doesn't say anything about conversations with the lawyer, and that's ineffective? Is that what you're saying? That's enough to plead ineffective assistance of counsel in a PC? I believe at this stage where we have an affidavit from Mr. Joyner and his verified petition that he signed does say that Mr. Gist knew, that the attorney knew about Mr. Gist. And, of course, you drafted the PC. This is not a pro se PC. It's a firm draft of the PC. That's correct. Now, with regard to Darkenia Donner, she, and I would submit a very, very strong witness, she does say not only did she, first what she said was I went to, I was down there. I was in the neighborhood. I used to live there. And I watched as I saw two young men that looked suspicious to me, so they drew my attention. I watched as they walked over through a vacant lot and to the scene of the shooting. Now, admittedly, she did not say I saw exactly the shooting. But she said moments later I heard the shots and saw them fleeing. And she took it upon herself to take a picture. She saw one of the young men again. She took a picture of him. So she's thinking I saw this. I have a picture of the young man that I say was one of the two involved. And she knew, but not a friend of Antoine Joyner, of the appellant, but somebody who knew him. And she said she went to the police and she said that's not the guy. You got the wrong guy. And we know that happened because the police officer testified, yeah, she did come in. We had a long talk. So let's talk about that. So her affidavit says that she saw these people. She doesn't see the shooting. She doesn't really see what these two people did on the street. But having said all that, ineffective assistance of counsel, your argument is that counsel is ineffective for not calling her at trial, correct? Is that your argument? Absolutely. Okay. That evidence came in to trial. The jury heard all that, the judge, I think, heard all of that through the officer, correct? I respectfully disagree, no. It was brief. It was a fly-by. I mean, hardly heard anything. I mean, I think the officer was cross. You will agree, the police officer testified and said this woman came and talked to me and said, I saw these people on the street and I interviewed her and she said, but we can certainly see what the record is. But that was introduced at trial. But you're saying counsel was ineffective for not also calling her in the Twentys case? Absolutely. Absolutely. A cross-examination, a very brief cross-examination saying, did she come, is much different than Darkanya Donner getting on there. And the state does try to make this, oh, well, she didn't see it all. We're talking about a moment. I mean, you see somebody run. They're suspicious. Then you hear gunshots and you see them running away. That's just as good almost as seeing them. And you think about it so much, you go to the police officers. The police officer said about, just dismissed it at trial, and Darkanya would have been on the stand for a long time with no impeachables to say, to put forth the defendant's case and say, I know him, that's not him. Much, much more powerful. So, yes, and I think that it doesn't help the state to avoid the ineffective assistance counsel allegation by saying that this came out. Rather, we don't have to wonder whether or not the attorney knew about this because the police officer, he was able to cross very minimally on it. And so we have weak evidence where DNA on the gun matches, excludes my guy and matches a Matthew Smith. This is evidence that the police officer saw fit to collect because he thought it was connected to crime. And DNA on a hat and the gun that ejected the cartridges at the murder scene was found and it did not belong to the defendant and Matthew Smith couldn't be excluded. So that's not only no forensic evidence against Mr. Joyner, but evidence against someone else. And all we have against him at the trial is, well, these two guys, after a while, they didn't describe him, but they saw the line and they said, oh, yeah, that's him, in what probably was a gang dispute. And so for those reasons, I think adding D'Arkandia Donner alone would have been enough to chip the scales in favor. And, again, this is a first-stage dismissal. Is this delusional? I don't think so. Is there no basis in factor law? I don't think so either. So I think the dismissal outside the 90 days was improper. And I'd like to just briefly talk about the majority opinion. At one point in the majority, they cite the local rule in Cook County, which does not say paying a fee is a prerequisite. They say the majority opinion also says in paragraph 48, we recognize that post-conviction was attempted to be filed on July 7th. So what does that mean? It was filed. I mean, whether or not this court will decide it was docketed. But the majority opinion is so confused and internally inconsistent. It wasn't attempted to be filed. It was indeed filed. I think that shows the confusing nature of how the majority is strained to say this wasn't docketed. And then we get to the icons. The majority and the state place great emphasis on these icons, which is a little magnifying glass and a piece of paper, and say this icon is not next to the July 7th PCP date, where it says PCP filed, fee not paid. The icon isn't there. So all of a sudden we're attributing great weight to this icon. Counsel, is there an explanation of what the icons mean? Any official explanation on that sheet? Absolutely nothing. There's nothing in the record about what these icons mean. The state argued it, and the majority at one point said, our opinion is supported by the fact that an icon appears next to the entry only after the fee was paid, suggesting that the petition was not properly before the court until that point. I see no facts and no law that justifies that conclusion. We don't know what those icons mean. If somehow a clerk had come in and said, here's what this means, here's what this means, then yes. But nowhere in the law in any cases is the icon described. The state said it's what it means, and I think it should be disregarded what they're saying about it. Also, the state argues that observable results will follow if we don't, if their position isn't accepted. I submit to you that observable results will be that the clerk will have too much power in the future because what decisions they make will be the adjudication, and will result in affecting a petitioner's constitutional rights violations or elect violations. The clerk could just not request a fee, not send a letter, not set the case on the call, or double-stamp the post-conviction with different filing dates like happened here, which I still don't understand. We have two filing dates on one piece of paper. July 7th, they went back and stamped August 4th on the July 7th, which, again, very confusing in this record. So for all those reasons, unless there are further questions, we would ask that the case be remanded for proceedings consistent with the post-conviction area. Thank you very much. Good morning, Your Honors. May it please the Court, I'm Assistant Attorney General Jeremy Sawyer on behalf of the people. I'd like to begin with the statutory interpretation question. The parties agree that this Court's decision in Keeple v. Brooks governs the statutory question of when the docketing of a post-conviction petition occurs under Section 2.1 of the Act. In Brooks, held that a petition is not docketed until a copy of the petition is entered into the Court's official records and scheduled for further proceedings, and that's the point at which docketing occurs. Here, the petition was not docketed because it was not entered into the Court's official records or scheduled for further proceedings until August 4th, 2021. Counsel, what does it mean to be entered into the Court's official record? So it means that a copy of the petition is entered into the Court's records and appears on the docket so it would be accessible to the Court. And that's where I think the icon is useful. And contrary to my friend's argument, the Court can take judicial notice of the meaning of the icon, which is that a copy of the petition was entered into the Court's records. But it's undisputed here that the petition was not scheduled for further proceedings, as Your Honor has noted, on July 7th when it was first filed. Is that a requirement that it be scheduled for further proceeding? Yes, Your Honor. So the Court's decision in Brooks, which governs here and which the legislature has acquiesced to, emphasized that it must be scheduled for further proceedings. And that's the main holding of Brooks, which I think my friend does not sufficiently address. As Your Honor's noted, that there is no dispute that there were no further proceedings that were contemplated at the time that the petition was first filed on July 7th. And it wasn't until Petitioner refiled the petition on August 4th, 2021, complying with the local rules, paid the required fee, that the petition was scheduled for further proceedings, which in the Cook County Circuit Court would be an initial hearing on the post-conviction petition. So the question of not paying the fee, you assert that that means it wasn't docketed because the fee wasn't paid or it wasn't filed. Which one? It's not necessarily the case that a petition is not docketed. What's your position with respect to this particular case? This petition was not docketed until it was scheduled for further proceedings. It was set for initial hearing by the clerk and assigned to a judge. And that will often coincide with the paying of the fee because until the fee is paid, there's no reason for the clerk to set the petition for initial hearing because there are no further proceedings that would be contemplated in that case until such time as Petitioner has either paid the fee or obtained a waiver under this court's rules. Was the petition filed then or is it unfiled, according to your analysis, because of the non-payment of the fee? So, Your Honor, it was filed under this court's precedence. On July 7th, filing means submitting a petition that ultimately receives some kind of judicial ruling. And I would explain why the clerk entered an electronic docket entry for July 7th saying PC filed, even though it wasn't entered into the court's records because that would be relevant for purposes of timeliness for the statute of limitations issue. So it was filed at that point, but it wasn't docketed because it was not scheduled for any further proceedings. And no further proceedings would have occurred had Petitioner not paid the fee as he ultimately did or obtained a waiver of the required fee. Mr. Sawyer, you're suggesting that this icon indicates something that we should take judicial notice of. Is that correct? Yes, Your Honor. So this court can take judicial notice because it's verifiable via objectively reliable means. And I would also note... Let me just say that when I look at the use and non-use of this icon, it is not obvious to me what it indicates. Yes, Your Honor. I don't think it's necessarily obvious just from looking at the electronic docket sheet. I can represent to the court that I've used the Cook County Circuit Court's portal that's an objectively verifiable method of understanding that that's how that court's docket operates. And I would also note... Is that in the record somewhere? No, Your Honor. It's not in the record. So what are we taking judicial notice of? I mean, what can we go to to say, oh, okay, this is what explains what this means. Well, we know from... We know that a document is not... When a document is entered into the Cook County Circuit Court's records, that that's what the icon indicates. And that's what the appellate court majority noted, that that's how it operates. I would also note that Petitioner doesn't propose any other potential alternative meaning for what the icon might mean. So it is objectively verifiable via using the Cook County Circuit Court's website. And this court can note that. So we would go on the website and do what? If you go to the website and you click on the icon, and this would be the case in any case that's on the Cook County Circuit Court's portal, you click on the icon and a document... If that icon appears, you click on it and a document that's associated with that entry will be pulled up. Counsel, is there anywhere where the Cook County clerk explains what the various things mean on their records so that we could verify it that way? Your Honor, I don't believe that that's in the record. I would note that there's no alternative explanation for what this might mean otherwise. Petitioner does not offer an alternative explanation. And also it makes sense that a document would not have been associated with this entry because there were no further proceedings that were contemplated. So it makes sense that the circuit clerk would enter a docket entry saying that a PC petition has been filed for purposes of statute of limitations and then not enter the document until August 4th. Since the clerk doesn't explain it, you're asking us to accept your explanation, correct? Well, the appellate court correctly noted and the appellate court in the First District is familiar, I believe, with the way that these portals work. And again, there's no alternative explanation. So I think there's no real dispute between the parties to the extent that my friend does not propose another explanation for what this might mean. And it's undisputed that there were no further proceedings that were contemplated at the time that the petition was first filed. But it was incumbent, or maybe not incumbent, but it was advisable for the circuit clerk to note, to make an electronic entry saying that this petition had been filed because that would become relevant for purposes of the statute of limitations. So I think to understand this court's decision in Brooks, which has now become part of the statute, it's helpful to consider the purpose of the 90-day period under the Act. And that's to ensure a timely judicial review of post-conviction petitions. So the General Assembly has determined that if a judge cannot determine whether the petition is frivolous or patently without merit, within 90 days after docketing, the petition is automatically advanced to the second stage and the petitioner is appointed counsel. So the Act provides a remedy for when judicial review of petitions is not timely. But it doesn't provide any remedy for when the circuit clerk does not docket the petition, regardless of what the reason for not docketing might be. Because before such time as the petition has been entered onto the court's official docket and scheduled for further proceedings, there's nothing for the circuit court to do. The circuit court is likely not aware that a petition has been filed, likely been assigned to a judge. There's nothing for the court to do until it's docketed, and that's why this court has interpreted in Brooks the 90-day period to begin running after docketing. And the legislature also has not amended the statute following this court's interpretation of the statute in Brooks that docketing requires that a petition be entered into the court's records for further proceedings. The legislature had instead intended for the 90-day period to begin running when the petition is received by the circuit clerk or when the circuit clerk notes that it has received the petition. The legislature could have changed the language from filing and docketing to filing, and that would achieve the result that Petitioner proposes here, that once he files the petition and sends it to the circuit clerk, that the 90-day period begins to run. But the legislature has not made that change, and it has adopted this court's statutory interpretation in Brooks. I would submit that there is no compelling reason to depart from stare decisis here, as Petitioner has not provided one. I'd like to touch on the appellate court case law that my friend mentioned. First, the Begay case supports our position because it was crucial in that case that the docketing occurred at the time that an initial hearing had been set on the petition. And so that was the key point that the appellate court had noted in interpreting Brooks. So that's a strong case in our favor, despite my friend's representations. Lentz, on the other hand, is incorrectly reasoned under Brooks because in Lentz, the court looked at whether a petition had been electronically noted on the docket to have been filed, or when the petition... when the circuit clerk had sent a letter to Petitioner's counsel saying that a filing fee was due. The Lentz court said either of those dates would be the docketing date. And that's incorrect under Brooks because there aren't any further proceedings that are necessarily contemplated at that time because someone, a petitioner, as here, could decide not to pay the filing fee. And if the filing fee is never paid, I think there would never be any further proceedings. And that's necessary to enforce many circuit courts' local rules which require that a fee be paid at the time of filing. As my friend mentioned, there would be unintended consequences of adopting his interpretation that a petition is docketed at the time that the clerk enters a notation that it was filed, regardless of whether the requirements have been met, including payment of any required fee. It would really provide an incentive for petitioners not to pay the required fees and essentially bypass first-stage review because a petitioner could file a petition without paying the fee, understanding that it's very likely that no further proceedings would ever be contemplated until such time as the 90-day period, if it were considered to have run from the time of filing, had expired, and then the petition would automatically be advanced to the second stage. And that would really render fee requirements meaningless because, as courts note across various contexts, for instance, when filing a complaint or taking an appeal, the fee must be paid at the time of filing. And that's what Cook County Circuit Court Rule 15.4 provides for here. Turning to the record, it does show that the petition was not scheduled for any further proceedings when it was first filed on July 7th. So the electronic docket entry for July 7th, as we've noted, has no icon associated with it, and this court can take judicial notice of what that means. It's also the case that there was no hearing or any further proceeding that was scheduled on July 7th, and that's undisputed. There would not have been any further proceedings if July 7th, the date of filing, was the only event that had occurred. It was not until after the petitioner paid the required fee on August 4th that the petition was scheduled for further proceedings. And we know that the circuit court, on August 18th, when it first held its initial hearing, noted that August 4th was the date of the petition. Could you turn your remarks to the merits of the petition? Yes, Your Honor. So initially, the ineffective assistance claim is the only claim that's properly before this court. In order to advance to the second stage on that claim, petitioner has to make an arguable showing on both the prejudice and performance prongs. And first, on the prejudice prong, as the appellate court correctly found, it's not arguable that the outcome of the trial would have changed with the addition of either Gist or Donner's proposed testimony. And that's because the eyewitness identifications by the state's witnesses, Leon and Thomas, were very strong evidence of guilt. So they had ample opportunity to see the shooter. They were about 10 to 15 feet away from him. They knew him from the neighborhood. They both identified him as the shooter. And that was very strong evidence that petitioner was the shooter. And that's why on direct appeal, the appellate court found there was no prejudice from the ineffective assistance claim that was advanced there, which is a counsel's failure to move to suppress lineup and photo array evidence. Because those identifications were extremely strong evidence that petitioner was the shooter and not with the crux of the trial. Well, likewise, wouldn't the witness, Donna, wouldn't that, if that had been submitted at trial, if she would have testified, wouldn't that be equally as strong evidence on the other side, which may then also balance, counterbalance the two that did testify? No, Your Honor. Because Donner does not claim that she witnessed the shooting. So she claims that she was in the vicinity. She saw two men in the area. And neither of them was petitioner, who she knew because she styled his hair, but she didn't see the shooting and she wasn't with petitioner at the time of the shooting. And so that evidence would not have changed the outcome, especially because it would not have undermined the key evidence in the case, which was the identifications that were offered by state's witnesses, Leon and Thomas. Petitioner doesn't cite any precedent for the proposition that a witness like this who claims to have seen someone sort of matching the description of the suspect in the area would have been sufficient to change the outcome of the trial, even at the first stage. And as Your Honor's noted, the evidence that Donner would have offered, which is that she knew something about a potential second suspect, that did come in at trial. It was introduced. The fact finder, the trial judge, did see that evidence and was aware of it. And so Donner's testimony would not have changed the outcome, in part because, Your Honor's noted, the fact finder was aware of that evidence. Turning to the performance prong, there's also not an arguable showing on that prong either because counsel knew about both of these witnesses, both Gist and Donner. They were potential witnesses. We know that from the pleadings and from their affidavits. The post-conviction petition alleges that counsel knew about Gist's potential testimony that he would have given some kind of details about where he said Petitioner was during the time of the shooting. And counsel also knew that Gist and Donner were potential witnesses. And so it's clear from the record that not calling them was a strategic decision. Counsel instead decided to cross the state's witnesses about the strength of their identifications. And that was a reasonable decision to focus on weaknesses in the state's case rather than focusing the attention of the fact finder on the credibility of alibi witnesses. Both potential witnesses, Gist and Donner would have been subject to impeachment. Gist more clearly because he was Petitioner's friend but Donner also would have been subject to some kind of impeachment both about the strength of her testimony and about the nature of her relationship with Petitioner. We don't know exactly what her relationship was but she was his hairdresser, she had some kind of relationship with him. And Gist could have also been cross-examined about the fact that he wasn't with Petitioner even according to his affidavit for the entire time period. So according to Gist's affidavit, he did part ways with Petitioner when Petitioner went to the gas station. That's what he told Gist anyhow according to the affidavit to obtain a blunt. And because these events all took place within a very compressed area, Gist's testimony would not have provided even a complete alibi because Gist was not with Petitioner for the entire time. If the Court has no further questions, people ask that the Court affirm the Appellate Court's judgment. Thank you, Your Honors. Counsel? Counsel, you have a vote. Thank you once again. Just a couple comments. Counsel argued that the case was not entered into the Court's records. I submit to you absolutely it was. I mean, I know their argument is it wasn't documented and that's what we're trying to decide today, but it was definitely entered into the Court's records and that's what Begay said when it said the half sheet can be looked at as an official court record for when the case was entered into it. Mr. Johnson, can you respond to the idea that if nonpayment of a fee could be used as a strategy to delay the case being advanced before the Court and then wait the 90 days? Yeah. I don't know how great a strategy that would be because you might be delaying the inevitable and doing more work. I mean, I don't see why that would be something someone would want to do. Then you'd just be dismissed at the second stage if the Court was going to do that if the petition is so weak. Here, they talk also about the icon and taking judicial notice. I respectfully disagree that this Court could take judicial notice of what that icon means. I don't know what that icon means. I have not offered another interpretation of it because I can't guess. Nothing in this record tells us what that icon means and the State is trying to say that icon means the case isn't docketed and I think that's a stretch supported by nothing and the Court should not take judicial notice of that. I think this case is the same as Lentz. Look at Lentz on the day the filing date was the docketing date and there was no difference in that case on that date. The letter hadn't been sent to the counsel requesting the fee. So I submit that Lentz looked at the same facts and said that's the docketing date. Future proceedings were contemplated by what we had which was delivery to the clerk, stamping and placing in the official record. I think it's important that Brooks also said Brooks did not specifically say a case does not have to be set for hearing. Brooks did not specifically say that a case does not have to be set for hearing to be docketed but what it did say explicitly was we are not saying that in order to be docketed the case has to be set on the call of a specific judge. So I say that is quite similar to what the State is arguing. I don't believe that there is a requirement that the case be set for hearing. But for some further proceedings? Well, like in Lentz, once you put it in the court record, it doesn't go into the court record unless future proceedings are contemplated. I believe that's enough under Brooks, Begay and Lentz. Unlike the majority, the State does not try to distinguish Lentz. I think for that reason because it is so on point. The State also argues that if you accept our position, then you're getting rid of the term docketing, rendering it meaningless in Section 122-2.1. But we are not asking you to do that. Filing, I agree, is not equal to docketing. If the PC was just delivered, stamped and not put in the official record, it's not docketed. But that's not what we have here. And then as to the merits, the State, in comments today and in the briefs, argues that Ms. Donner says she was in the vicinity or she happened to be in the neighborhood that day. That isn't what she's saying. As Chief Justice mentioned or said, we need to look at the affidavits. And I submit, please look at the affidavit of Ms. Donner because it is a lot more. It goes on and on about every single thing she did and why she was there. And we do know in this record what the relationship was. She'd done this young man's hair. That's it. And so she, I submit, she was absolutely not impeachable. And counsel is correct, just came with a little, he was a friend. So I suppose even years later they could say, well, he's a friend. But how does that hurt you just to, Donner especially, why not present her? No impeachables. And then you're putting, so you can believe the gang members who said, oh, it's him. Or you can believe Ms. Donner, a disinterested witness who has no reason except that she thinks the wrong young man is being prosecuted and being arrested. So if there are no further questions for all those reasons, we again ask that the case be remanded. Proceedings consistent with the Act. Thank you very much. Agenda number four, number 129784. Please remember to join her. It will be taken from your advisement. Thank you very much.